Case number 316-0537. In-ring marriage of Louise Zimudio, formerly known as Louise Ochoa, appellant by Allison Fagerman and Frank Ochoa Jr., epily by Paul Osborne. Ms. Fagerman. Thank you, Your Honors. Counsel, my name is Allison Fagerman and I represent the appellant. May I please the Court. In this case, the 48 months of permissive service, active duty credits that were purchased during the marriage are marital property. In support of that proposition, I would like to discuss three main points. The first of which is that the military service standing alone is not marital property. It is not property, but for the state employee's retirement service pension, which during the course of the marriage, excuse me. Well, maybe what you're trying to say is that the 48 months credited service that you can put into the SCRS program is not property per se. Is that what you're saying? I'm sorry, Your Honors, it's my nerves that are acting up. We don't fight. I apologize. We're nervous up here, so don't worry about it. The active duty military time itself is not in itself property, but for the fact that there's this service system or the state employee retirement system that time served in the military by Frank in and of itself has no property value in terms of the pension that we are talking about. What you're saying is that SCR gives it right. Yes, Your Honor. And that this right was your argument, the marital asset. Correct. And in furtherance of that position, the statute under 750 ILCS 5503C2A talks about, answers the question rather, what is marital property? And it defines marital property as that property that is acquired after the parties marry, including debts and obligations with certain exceptions. And the statute lists out those exceptions. Property, even in its broadest form, or defined in its broadest form, does not include active duty military service. And that point, I think, is key in terms of the end result in this case, which I asked the court to find, which is the 48 months is marital property. Let me ask you a question. Let's suppose that he's on the state police and before they're married, a year before they're married or some time before they're married, he buys that time to add into his pension. Then he gets married. And now, would you argue that was marital property under that scenario? Your Honor, I think that the way that the statute is worded, both with what is marital property, as well as the Ramsey case, which I cited to in my brief in Hunt, would say that in and of itself, those rights were acquired prior to the marriage. However, the distinction in Ochoa, obviously that those credits were acquired after the parties married. Well, but the big deal is the fact that it was purchased with marital funds, right? Your Honor, that's part of it. That's part of my argument. And yes, it was, those 48 months permissive military service were in fact purchased with marital funds. I think both in 2006 as well as 2011, during the time that Louise and Frank were obviously married. But the other part of it is that in this case, prior to, I'm sorry, subsequent to Frank's marriage to Louise, earned pension interest was a total of 11 and a half years. That was 138 months of the total 263.5, or in other words, close to 22 years of Frank's service in the state police. That was marital. That's more than half. And the reason that that is important is because, like Ramsey, which again was a partially derivative pension, in this case, it's also a partially derivative pension. When I say that, and I'll be quite honest that the court took me some time to wrap my head around that language, what exactly does that mean? Prior to Frank and Louise getting married, Frank had an interest in the CSRS pension, not because of his military service, but by his service in the state police. And he had earned quite a few years prior to his marriage to Louise. When he married Louise for an 11 and a half more years before his retirement, each year accruing rights, rights that would be, that would amure to her, she has an interest in that pension. Then, during his marriage to Louise, he purchases 48 months of additional credit in order to retire early. And I think that that proposition is clear, it's clear from the record, the trial court found, that Frank had retired at the age of 57 with 26, a little bit over 26 years of marriage, which was part of it, which was part of the eligibility for retiring early. The other part of it was the eligibility under the specific provision under the State Employees Retirement System statute, which talks about three requirements to get the permissive service military credit, which is one, the person has to be a member, two, that the person has to pay a contribution, and three, that the person serve active duty military service. Each of those components are part of the eligibility issue. But in addition, again, there's that other provision that I cited to you in my brief, and I can give the court the statutory citation, all of which together say, Frank gets to retire early. But that raises the great legal question, so what? What's that got to do with whether those four years are marital property or not? In other words, she didn't go to boot camp, she didn't serve in the military, and it seems to me that this all boils down to the big argument that, well, that time was purchased with marital funds. But in no way was she entitled to it, and the marriage had nothing to do with the fact that he was entitled to buy that time. The marriage is irrelevant to that. And, Your Honor, certainly that is the appellee's argument. The appellee argues, this is solely due to me. This is my service that I did 20-something years prior to the marriage that Louise had nothing to do with. That's what they argue. People think it's convenient to get into all these conflicts, but maybe it's much simpler. Are you talking about somewhat of a transmutation of a right into marital property that needs to be divided? Your Honor, I hesitate about calling it a transmutation. I know everybody would, but go ahead. Yes, for this reason. As I stated at the outset, the military service is not property. We're not talking about the military pension. Well, that's why you don't want to talk. Okay, let's go with another one. Maybe you can help me understand this. Let's say that through his blood relationship with some relative, that he has a right to acquire an asset. And that right comes into being to acquire it during the marriage. And he acquires that asset with marital funds. Does that asset become a right into the other spouse to get something, a portion of it? Your Honor, I think that in... Maybe that's too close to your rejection of property. Well, Your Honor, what I would argue in that circumstance, as opposed to this case, the active duty military service for the service pension has no separate existence. And certainly I'm not trying to downplay by any extent Frank's contribution to the military. Well, we're asked to thank you for your service. Let's get into the law. What I am trying to indicate to the court is that that service has no property value but for the pension, which already existed. That's true, but also, it's also irrespective of the marriage. It's the fact that he was a state trooper is the reason he got to buy that in. It had no difference whether he was single or married or divorced or anything else. So the marriage, what's the marriage got to do with his right to buy that asset, which is to enhance his pension? Your Honor, the statute states, and again, I quote from 750 ILCS C2A, which answers the question, what is marital property? It was property acquired during the marriage. And not only is that section on point, but also under section B1, which talks about the distribution of marital property, that there's a presumption that property acquired, and property is defined by hunt, any part of such pension or profit sharing interest earned or acquired during the marriage is marital property. There is no question that in this case, the couple together purchased those additional 48 months of permissive military service in order to enhance the existing pension. And when I say enhancement, what I am referring to is the couple bought these additional four years, which allow Frank under the other provisions of the pension code to retire at 57 years of age with 25 years of creditable services, the code references it. And so, Your Honor, in this case... So what it is, okay, the enhancement, just to simplify, is an earlier retirement date and or an increased annuitant benefit? I would say yes, Your Honor, to both. And the reason why is because, as this Court is aware, under Chapter 40 of the CSRS pension, the State Employees Retirement System's pension, the additional four years gave Frank, instead of 21.95 actual years of service with the state fees, it gave him over 26 ending years with his retirement. Obviously, the value of the pension increased because of that. But not just that. When Frank retired, he was 57 years of age. The other provision of the statute, the CSRS statute, indicates that a person who is at least 55 years of age with 25 years of creditable service can retire without the early retirement penalty. So in the appellee's brief, they argue strenuously, but, Judge, this is all due to Frank. This is all due to Frank. It's his active duty military service. Five minutes, please, counsel. It's all him. It has nothing to do with Louise. But under the pension code itself, and again, under the two provisions that I cited to you in my brief, and even I think the appellee concedes in their brief, the CSRS pension itself, that deals specifically with the four-year enhancement for active duty military service, says membership, it says monetary contribution, and it says active duty military. It has to be partially derivative of the right to receive the pension. And the only one of those three factors that is relevant to this case is the fact that it was, you know, he purchased it during the marriage with Mary Lee Fong. Because the marriage had nothing to do with his active service. That was long before he got married. And he joined the state police before he got married, did he not? He did. So he had that pension before. He had part of the pension ahead of time. And the reason why I say that is, in my opinion, an important distinction is the court by analogy looks at Ramsey. In Ramsey, the husband earned 20 years of a 31-year career with the teacher's retirement system. And the court held, look, it was 20 years of a 31-year career. 60% of his career with the teacher being a teacher was earned during the marriage. Likewise, in this case, 138 months or 11 1⁄2 years of a 21.95 actual years of service with the state police was earned during marriage. And that factor was significant to the Ramsey court when they said, look, we realize that this enhancement that pensioners paying the contribution for early retirement, we realize that that was both due to his non-marital contribution as well as the many years spent working as a teacher, part of which was marital, a large part of which was marital. But we are still deciding that the wife is entitled to a larger piece of the pie. The ruling was, to the extent that the non-pensioner is entitled to the pension, that would be the marital interest, to the same extent are they entitled to the pension as enhanced, with certain exceptions. And the Ramsey court, Your Honors, indicated specifically, as the appellee points out, but if it's Frank who did the active duty military service, that enhancement should only be inured to him. She should have nothing to do with it. But in truth, if his annuity benefit is increased because of this time, and she gets a percentage of whatever he gets, and the more he gets, the more she gets, so even without attributing those years to her and to the marriage, she's still got a little benefit here if his annuity benefit went up. Because, you know, X percent of 200 is more than X percent of 150, right? So she's still getting some benefit out of the fact that he has 26 years as opposed to 21 years. Your Honor, if I understand the court's question, Louise would, without the 48 months, if the 48 months were not in the picture, receive the 138 months that Frank served while married to her in the state police, plus I think there were eight and a half months of sick and vacation time. That does not include the 48 months. And so, yes, Louise would be entitled to her share of the 11 and a half years for certain, but in Ramsey, the court specifically held that to the extent, to the same proportion that she's entitled to her share in the pension, she's entitled to it as enhanced. Even though in that case it was partially derivative, the court still came to that result. Well, I've got to ask a question here. Okay. It gets very confusing here. Let's simplify it. What was the enhancement of that, these 48 months of military time? What is the enhancement? Is it earlier retirement? Or what is it? It's both, Your Honor. It is under... Under... Okay, what is it she... Let's simplify it. What is it she's not getting that she should get? She is not getting her interest in the pension as enhanced. She's not being... Okay, so what is the enhancement that she's not getting? Instead of the 138 months that were earned during the marriage, she's not receiving the additional benefit of the 48 months, which would be used according to Hunt as the numerator of the fraction to determine her marital share. So, in other words, what she's arguing about, Your Honor, as an analogy, she's saying, I deserve a bigger piece of a larger pie. That's what her argument is. Of the monthly annuity payment. Yes. But absent those 48 months of buying service, she would not have gotten any portion of an annuity payment until later on, correct? I mean, wasn't her spouse able to start an annuity earlier because of that purchase? Or not? The parties... Frank retired in 2011. And at that point in time, he had 21.95 of actual service months that he had served with the state police. When he bought in 2006 and 2011, he made two split payments, which I believe were equal amounts. Well, that's a lot of detail. Go ahead. Just get to the point. So in 2011 was the last payment that he made to purchase the enhancement, which is just under $10,000. Which allowed him in 2011, instead of retiring with 21.95 years of creditable service, he retired with over 26. And that was after that... The answer is, he could have retired at that date regardless of whether he purchased it or not. He also had to be 55. Okay. So he was able to retire earlier. Yes. And to get a payment sooner than normal, absent buying the 48 months. Yes. Okay. Thank you for that. Thank you. Mr. Osborne. Thank you. Good afternoon. I represent the appellee, the respondent, defendant, Frank Ochoa, counsel. Your Honor, I want to start with where we agree. We agree that the standard of review is de novo because the facts are uncontested. We're looking at construing two different statutes that are interrelated in this particular case, given the factual circumstances. The facts that are relevant, which are uncontested, is the chronology, which has been already reported. We have six years of military service from 1974 to 1980. We then have a gap of nine years. We have 11 years of unmarried, premarital service for the Illinois State Police. We then have an additional 10-plus years of Illinois State Police employment during this marriage to Louise. We also know that at two different points during the marriage, Mr. Ochoa wrote two checks, each roughly $4,600. One was in 2006. One was in 2011. And each of those checks triggered his entitlement to an enhanced ultimate pension payment. The enhancement was 48 months of service credit, and there's also no dispute what those numbers convert to. By paying a total amount of $9,626 of marital property, he acquired an asset which had a value in excess of $1,000 per month for the rest of his life, starting at age 57. We do the math on that, and we use any kind of actuarial life expectancy. It's in the hundreds of thousands of dollars that this asset is valued at. Did he, at the time of the purchase was complete, 2011, did he independently have the age and the years necessary to retire at that date? He does. And so without purchasing this, he could have retired at age 57 with a 21.9 years? Correct. And to answer Justice Holridge's earlier question, was this an increase in his annuity or did this facilitate an earlier retirement? It is clearly an increase in his annuity. The payment went up because he now has 48 months of additional service credit, which is 48 out of a total of 320 months of service credit. So it's roughly 15% of his entire pension is associated with this enhancement. Now, this takes us to what the two statutes are. We have 503. 503A tells us that the issue of whether this is characterized as marital or non-marital property is how did he acquire this interest? How was it acquired? 503C2A tells us that the legislature acknowledges that there are circumstances under which one estate of property can make a contribution to the other estate of property to which the contributing estate is entitled to be reimbursed. So what our trial court judge, Judge Hotman, looked at this scenario and said, okay, the marital estate made a contribution of $9,600 that enhanced the asset which was created when he gave up four years of his life for active duty honorable military service. So what the marital estate put into this asset was the $9,600. And under C2A, the marital estate is entitled to be reimbursed that $9,600. And in fact, pursuant to the supplemental judgment that was entered and not stayed, Mr. Ochoa has already paid back 50% of the amount that the marital estate contributed for this asset. Now, when we think about the word acquire, how do you acquire something? How do you acquire anything? I went to the dictionary. What does the dictionary tell us acquire is? To acquire is to gain for oneself through actions or efforts. Now, Louise would have us believe that this asset was acquired by writing a $9,600 check. He gets the right to $1,000 a month for the rest of his life. That's not how he acquired it. He acquired it through four years of active duty military service. The other thing that you have to look at beyond the Dissolution Act is the Illinois Pension Code. Because the Illinois Pension Code tells us that there are 12 separate pension systems all governed by this Illinois Pension Code, each with its own separate article. So the state retirement system serves is Article 14. And in Article 14, there's the relevant section quoted in both of our briefs, Section 14-104. 104 consists of 20 different subsections, A through V. And 104, the title of that section is Service for which Contributions are Permitted. Section 105, by contrast, is Service Credit for which Contributions are Not Required. If you read 105, one of those services for which no contributions are required is active duty military service where a couple of additional facts are present. One is that the member was a member before he went into active duty service and returned to his employment within 15 months of discharge. For that service, the Illinois legislature said, as a matter of policy, we want to encourage our employees, we want to encourage our residents to participate in active duty military. And we want to reward them for that service. So under 105, if they take a break in their employment, we're not even going to make them contribute. Under 104, Frank's situation, he was not an employee before he went into the service. He was 18. He didn't join the state police until years, 10 years after he was done with his military service. So he didn't qualify under 105 for the upgrade, the enhancement, without a contribution. So he had to make the contribution. So is the distinction purely that there was a check written, which under C-2 of the Dissolution Act can be reimbursed to the federal state? Clearly. There's no question that the only distinction between an employee who retires with an upgrade that they didn't have to write a check for, to an employee who has to write a check and wrote the check during marriage, that the basic asset, the right to the upgrade, was acquired by the four years of military service, not by the check. There's only one case, and both briefs cite that case. It's the Fifth District case from 2003. It's the Ramsey case. Ramsey isn't quite the same facts because Ramsey doesn't involve a service employee. It doesn't involve military service. What Ramsey involved was a teacher who taught for 20 years during the marriage, got divorced. There was a reservation of jurisdiction to enter a Hunt Formula pension in Ramsey. Then after he was divorced, he wrote a check for what's called in the teacher's retirement system a 2.2 upgrade. You're only allowed a 2.2 upgrade if you perform 20 years of duty. Unlike Mr. Ochoa's pension, which there was no condition, no requirement that he work for 6 years, 20 years, 4 years, 1 year, for 1 week. He wouldn't have been entitled to upgrade his service credit the week after he started employment. There's no condition of service credit before being eligible, which there is for some pension systems, the teacher's retirement 2.2 upgrade. What Ramsey tells us is that Mr. Ramsey's pension, even though he wrote the check after he was divorced, it's not the check that is what is deemed to have been the derivation of his asset. That asset and the increase in the value of his assets derives from his 20 years as a teacher. The check is a marginal. In fact, Justice Chapman, in writing the opinion in Ramsey, notes that who would believe that you could write a $13,000 check and get then a monthly benefit of $1,000 a month for the rest of your life. It makes no sense. It's not the check that is the contribution which acquired the asset. It's the years of service. So even though the facts are sort of juggled around from Ochoa to Ramsey, the lesson is the same. It's not that check that makes the difference. The derivation, the terminology that's used by the Ramsey court, the derivation of the asset is the time that was spent. In Mr. Ochoa's case, it was four years of military service, 20 years before this marriage. Five minutes, please, counsel. You have no further questions? I have just a couple. He was eligible to retire on that day, but he would not have been able to retire and then get this at any other time. It has to all be paid, correct, before you retire? Correct. Okay, and that is only – I think you already answered my other question. I'm going to follow up on that. But he put it back to Boris and then bought it, just like the teacher, I guess, or bought it before. I don't think he could have because he had to make his declaration of his intent, just like there are – That's assuming he's not planning on retiring. Right. If you decide, Jim, that is a handsome, I'll work a few more years. For example, in Mr. Ochoa's case, in the briefs, it talks about other upgrades that he purchased. He purchased an upgrade for six months for unused sick time. He purchased another upgrade for unused vacation time. So those benefits were acquired during the time that he worked, not 20 years before, because the derivation of those, they were acquired during the time that he was working as an Illinois State police officer, not derived from or acquired during the time 20 years earlier when he was in the active duty military service. I just remembered my other question. How long after he actually retired were they married then? He drew the pension and they – it was – Two and a half years. Okay. The separation was prior to the dissolution, but the dissolution was two and a half years after retirement. Thank you. All right. Thank you.  Thank you. Unless I'm mistaken, I believe that Frank retired – his first year of retirement was on August 1, 2011. The date of dissolution, I believe, was May 2, 2016. Counsel points out and emphasizes the check. And if it were just the check, and I think in the appellee's brief, even, there was an example about what if these parties were married for a week? Would I be arguing for the same result? And the answer to that is no, I would not be, not to the same extent. And the reason why I say it that way is because, as this court is aware, under Hunt, Hunt sets forth a formula for determining a non-pensioner spouse and the pension. And if the parties were only married a week, and while Frank was working for the state police, she would have a much, much, much smaller piece of the entire pie. It would be a sliver. However, in this case, just like in Ramsey, we're not just talking about a check that was written out during the marriage. We're talking about an enhancement to a pension that was earned 52% during the marriage. Where do I get 52% during the marriage? For 11 1⁄2 years of 21.95 years, they earned that pension together. And again, under Ramsey, Ramsey set forth the ruling in that case was, even though this is a partially derivative pension, we understand that, but for two things, but for John Ramsey's 31 years working as a teacher and this non-marital check that was written out solely by him, there would be no eligibility for the enhancement. In this case, just like in that case, you have a situation where a substantial portion of the pension was earned during the marriage. Then you have a marital enhancement to that pension. Even though it's a partially derivative pension, Louise is still entitled to her portion as a whole of the pension as enhanced. It's interesting, and you had to read the opinion quite honestly a couple times. The Ramsey opinion, even though it was partially derivative, the court awarded her a larger piece of a larger pot. And the reason why there was the reimbursement that was ordered is because the court said, hey, look, I cannot give back to John Ramsey. We can't untangle what these two have done together. We can't untangle this enhancement to this pension that was largely earned during the marriage. Therefore, we're telling you, John Ramsey, I'm sorry, you, the former Mrs. Ramsey, you have to pay John back for his contribution for that enhancement. But she got a larger piece of a larger pot. And again, the ruling from that case is to the extent that marital, that the pension is marital property, the same is true for the enhancement. I am not simply arguing to this court that it's a check. It's a check, plus 52% of that pension earned while married. These parties were married for 16 years, remained married for five years after he retired. He could have bought the enhancement. He could have had two years on the state police. Your Honor, believe the way that the statute is written, that is correct. But in this case, that pension, the value of the pension obviously would have been much, much less if it were purchased versus his retiring with so many years of service. And again, I think the Ramsey case stands for the proposition that we have to look to see how much of that pension was earned during the marriage. That is the crux of it. So for all of those reasons, I ask the court to find that the 48 months of military service credit that was purchased during the marriage is marital property. Thank you. Thank you both for your arguments here this afternoon. This matter will be taken under advisement. The position will be issued. We'll be in a brief recess for a panel change.